**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WASHINGTON**

Case No. 1:14-CV-03047-VEB

SILVESTRE MARTINEZ,

                        Plaintiff,               DECISION AND ORDER

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                        Defendant.

## I. INTRODUCTION

In November of 2010, an application for supplemental security income ("SSI") benefits under the Social Security Act was filed on behalf of Plaintiff Silvestre Martinez, who was under the age of 18 at that time. The Commissioner of Social Security denied the application.

Plaintiff, represented by D. James Tree, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 7).

On January 5, 2015, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 22).

## II. BACKGROUND

The procedural history may be summarized as follows:

On November 23, 2010, an application for SSI benefits was filed on behalf of Plaintiff, who was then a child under the age of 18, alleging disability beginning August 30, 1999. (T at 151-56).[1] The application was denied initially and on reconsideration and a request was filed for a hearing before an Administrative Law Judge ("ALJ"). On September 18, 2012, a hearing was held before ALJ Kimberly Boyce. (T at 42). Plaintiff appeared with his attorney and testified. (T at 49-64). The ALJ also received testimony from Trevor Duncan, a vocational expert (T at 75-81), and Dr. Kenneth Asher, a medical expert. (T at 65-74).

---

[1] Citations to ("T") refer to the administrative record at Docket No. 11.

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

On November 5, 2012, ALJ Boyce issued a written decision denying the application for benefits and finding that Plaintiff was not disabled within the meaning of the Social Security Act either before or after he turned 18. (T at 15-41). The ALJ's decision became the Commissioner's final decision on February 19, 2014, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

On April 16, 2014, Plaintiff, acting by and through his counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 1). The Commissioner interposed an Answer on June 27, 2014. (Docket No. 11).

Plaintiff filed a motion for summary judgment on October 20, 2014. (Docket No. 15). The Commissioner moved for summary judgment on December 31, 2014. (Docket No. 21). Plaintiff filed a reply memorandum of law on January 14, 2015. (Docket No. 25).

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted, and this case is remanded for calculation of benefits.

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

# III. DISCUSSION

## A.    Sequential Evaluation Process

### 1.        Child's Benefits

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; *see generally Meredith v. Astrue*, No. CV-09-0384, 2011 U.S. Dist. LEXIS 37363, at *3 (E.D.Wa. April 5, 2011).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases (see below), requires a determination of whether the child has engaged in substantial gainful activity. 20 C .F.R. §

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

416.924(b). If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test requires an examination as to whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c).

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). *Id.* Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d). If an impairment is found to meet or qualify as medically or functionally equivalent to a listed disability, and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1).

Analysis of functionality is informed by consideration of how a claimant functions in six main areas, commonly referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Meredith*, 2011 LEXIS 37363, at *4. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do."

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

20 C.F.R. § 416.926a(b)(1). Those domains include: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Meredith*, 2011 LEXIS 37363, at *4. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Meredith*, 2011 LEXIS 37363, at *4. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately,

effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

### 2.    Adult Benefits

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

medially severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.    Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989).

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

## C.    Commissioner's Decision

Plaintiff was born on December 3, 1993, and was therefore in the "adolescents" age group under the Social Security Regulations on November 23, 2010, the date the application was filed. (T at 22).  Plaintiff turned 18 in December of 2011. (T at 22).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. (T at 22). The ALJ determined that, prior to attaining 18, Plaintiff had the following severe impairment: impaired intellectual functioning. (Tr. 23-24).  However, the ALJ concluded that, prior to age 18, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 24).  The ALJ also found that, prior to age 18, Plaintiff did not have an impairment or combination of impairments that functionally equaled the Listings. (T at 24-32).   Thus, the ALJ concluded that Plaintiff was not disabled before attaining age 18 and was not entitled to child's benefits. (T at 33).

The ALJ determined that Plaintiff had not developed any new impairments since age 18, but continued to have a severe impairment, *i.e.* impaired intellectual functioning. (T at 33).  The ALJ found that, since age 18, Plaintiff did not have an

impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 33-34).

The ALJ concluded that, after the age of 18, Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following nonexertional limitations: Plaintiff can perform work that is unskilled, routine, and repetitive, and can work in proximity to coworkers, but not in a team or cooperative effort and is limited to work that does not require more than occasional independent judgment. (T at 34-36).

Plaintiff has no past relevant work. (T at 36). However, considering Plaintiff's age, education (marginal), work experience, and RFC, the ALJ determined that, since turning age 18, there were jobs that existed in significant numbers in the national economy that Plaintiff can perform. (T at 36-37).

As such, the ALJ concluded that Plaintiff had not been disabled, as defined under the Act, from December 2, 2011 (the date Plaintiff turned 18), through November 5, 2012 (the date of the ALJ's decision) and was therefore not entitled to benefits. (Tr. 37-38).   As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (Tr. 1-4).

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

**D.    Plaintiff's Arguments**

Plaintiff contends that the Commissioner's decision should be reversed.  He offers two (2) principal arguments in support of this position.  First, Plaintiff argues that the ALJ erred by finding that his dysthymia and social phobia were not severe impairments.   Second, Plaintiff contends the ALJ committed reversible error by discounting certain evidence, including evidence that Plaintiff's impairments met the Childhood and Adult Listings.  This Court will address both arguments in turn.

**1.          Step Two Severity Analysis**

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a "severe" impairment. See 20 C.F.R. §§ 404.1520(c), 416.920(c).  The fact that a claimant has been diagnosed with and treated for a medically determinable impairment does not necessarily mean the impairment is "severe," as defined by the Social Security Regulations. *See, e.g.*, *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). To establish severity, the evidence must show the diagnosed impairment significantly limits a claimant's physical or mental ability to do basic work activities for at least 12 consecutive months. 20 C.F.R. § 416.920(c).

The claimant bears the burden of proof at this stage and the "severity requirement cannot be satisfied when medical evidence shows that the person has

the ability to perform basic work activities, as required in most jobs." SSR 85-28. Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers, and usual work situation." *Id.*

The ALJ determined that, prior to attaining 18, Plaintiff's impaired intellectual functioning was a severe impairment. (Tr. 23-24). The ALJ found that Plaintiff's impaired intellectual functioning remained a severe impairment after he turned 18. (T at 33).

In April of 2011, Dr. Emma Joan H. Billings, a clinical psychologist, conducted a consultative psychological assessment. She diagnosed social phobia, dysthymic disorder, and borderline intellectual functioning. (T at 323). The ALJ concluded that Plaintiff's dysthymic disorder and social phobia were not severe impairments. (T at 23).

With regard to dysthymic disorder, the ALJ noted that Plaintiff performed several activities of daily living, including chores, cleaning his room, and occasionally doing laundry. (T at 23, 319). Plaintiff also reported playing sports (soccer and football), participating in family gatherings, and working as an "asparagus harvester." (T at 23, 319). Dr. Billings described Plaintiff's depression

14

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

as "mild." (T at 323).   Thus, the ALJ found that Plaintiff's mild dysthymic symptoms did not cause a significant limitation in his ability to perform basic work activities. (T at 23).

As to social phobia, the ALJ believed this diagnosis was an exaggeration of Plaintiff's "shyness." (T at 23).  She noted that Plaintiff was cooperative with Dr. Billings's examination and reported that he had friends, participated in family gatherings, and got along with his sibling "pretty well." (T at 23, 53, 60, 318).  He attended neighborhood soccer and football games. (T at 318).   Plaintiff's school records indicated "no behavior concerns for the school setting." (T at 245). Plaintiff's special education teacher reported that Plaintiff had no problems attending and completing tasks and no problems interacting and relating with others. (T at 229-30). Thus, the ALJ found that Plaintiff's social phobia did not cause a significant limitation in Plaintiff's ability to perform basic work-like activities. (T at 23-24).

Plaintiff challenges these conclusions, noting educational records that indicated social and behavioral concerns "outside the acceptable range of classroom expectations." (T at 177).  In addition, Plaintiff contends that his self-reports of his activities of daily living were impacted by his impaired intellectual functioning and that his father's report of serious limitations was more accurate. (T at 215).

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

Plaintiff's father indicated that Plaintiff could not keep busy on his own, finish tasks he started, or complete chores most of the time. (T at 215).

This Court finds that the ALJ's step two analysis was flawed. The step two analysis is a screening device designed to dispose of *de minimis* complaints. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "[A]n impairment is found not severe . . . when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen*, 841 F.2d 303 (9th Cir. 1988) (quoting SSR 85-28).

Dr. Billings concluded that Plaintiff would have difficulty working in a capacity that required frequent public contact. (T at 323). Dr. Billings also opined that Plaintiff would likely "need an extended training period with instructions and directions demonstrated and repeated many times." (T at 323).

Although the ALJ incorporated a limitation on working in a team or cooperative effort with co-workers into the RFC determination, she did not include any limitation on Plaintiff's ability to engage in public contact. (T at 34). The ALJ also did not sufficiently address this limitation in the context of her step two analysis.

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

Moreover, Plaintiff's social activities, considered in context, were rather limited and appear to have been structured so as minimize the effects of his mental health impairments, a fact the ALJ appears not have considered.  For example, Plaintiff did not accompany friends to outside activities beyond his immediate neighborhood, and did not bring friends to his house or attend school events. (T at 321).  Individuals with chronic mental health problems "commonly have their lives structured to minimize stress and reduce their signs and symptoms." *Courneya v. Colvin*, No. CV-12-5044, 2013 U.S. Dist. LEXIS 161332, at *13-14 (E.D.W.A. Nov. 12, 2013)(quoting 20 C.F.R. Pt. 404, Subp't P, App. 1 § 12.00(D)).

The ALJ's characterization of Plaintiff's "work history" and reliance on that history in the step two analysis was also flawed.  Plaintiff worked sorting cherries in 2010 and worked with his parents picking cherries, apples, and pears since he was a child. (T at 318).  Plaintiff testified that he worked as an asparagus harvester for two weeks in 2012, but was fired after an argument with his boss concerning pay. (T at 51-53).  Regarding Plaintiff's history of working his parents, the ALJ did not explore the nature and extent of this work or examine what sorts of meaningful demands (if any) it placed on Plaintiff.  The fact that Plaintiff performed the work with his parents while he was a child suggests it may not have been particularly demanding.  In any event, there is nothing in the work "history" that demonstrates an

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

ability to consistently interact with the public, work in proximity to co-workers, or comply with the mental demands of basic work activity on a sustained basis.  In other words, Plaintiff's work history is not sufficient to demonstrate any ability to handle the daily demands of competitive, remunerative work activity. It also does not establish that his social phobia and dysthymic disorder are non-severe impairments.

The ALJ's step two determination was also based on Plaintiff's self-reports of his abilities.  However, the ALJ did not adequately account for the discrepancy between those reports and Dr. Billings's findings and the reports of Plaintiff's father (discussed further below).  The ALJ appears not to have considered the fact that Plaintiff's impaired intellectual functioning impacted his insight into his abilities. The ALJ herself found that Plaintiff's judgment was limited. (T at 34).   This certainly should have given her pause before she relied so heavily on Plaintiff's self-assessment concerning his ability to socialize and complete tasks.

Accordingly, the ALJ's step two analysis was flawed and cannot be sustained.

### 2.        Medical Opinions and Lay Evidence

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*,

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

      a.      *Dr. Billings*

The ALJ afforded some weight to the opinion of Dr. Billings, an examining physician, but found that Plaintiff's social isolation was not as significant as Dr. Billings believed. (T at 26). In addition, while Dr. Billings opined that Plaintiff would require extensive instruction preliminary to any work activity, the ALJ found this conclusion contradicted by Plaintiff's "work history." (T at 26). The ALJ's decision was flawed for the reasons stated above in the discussion of the step two analysis.

In sum, Plaintiff's self-reports of his (rather limited and structured) activities are not reliable indicators of his ability to consistently meet the mental demands of basic work activity. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.")(cited with approval in *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)).

Moreover, the ALJ noted the discrepancy between Dr. Billings' assessment, on the one hand, and Plaintiff's self-reported activities on the other.  The ALJ then used Plaintiff's self-reports to discount the conclusions offered by Dr. Billings. (T at 26). However, as noted above, the ALJ appears to have ignored the fact that Plaintiff's impaired intellectual functioning and judgment likely impair his insight into the nature and extent of his limitations.

Moreover, Plaintiff's "work history," which is limited, has minimal probative value and is not sufficient to contradict Dr. Billings's assessment.  Dr. Billings had the opportunity to observe and evaluation Plaintiff.  She also administered various tests that showed, *inter alia*, that Plaintiff was in the 1st percentile for adaptive functioning, had a "very literal," presumably meaning that he struggles with metaphors, understanding of language, and would have difficulty interacting with the public and completing simple tasks without intensive assistance. (T at 321, 323). Nothing in Plaintiff's very limited work history is sufficient to rebut these detailed

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

findings by an examining medical source.   The ALJ erred in discounting Dr. Billings's assessment.

b.       *Dr. Asher*

Dr. Kenneth Asher testified as a medical expert at the administrative hearing. When asked whether Plaintiff qualified under Childhood Listing § 112.05, Dr. Asher opined that Plaintiff "seems to satisfy the criteria . . . ." (T at 66).   Dr. Asher then said that there were "other qualifications and conditions" that he could add to his assessment, but "I wouldn't [inaudible]."  (T at 68, 69).[2] Later, Dr. Asher explained that under his "understanding of the Social Security definitions, [Plaintiff] would have qualified for 112.05" prior to turning 18. (T at 69).

The relevant portion of Listing §112.05, subsection (D), requires (1) a valid verbal, performance or full scale IF of 60 through 70 and (2) a physical mental impairment imposing an additional and significant limitation of function.  The first portion of this Listing was met because Plaintiff had a verbal IQ of 67 in 2006. (T at

---

[2] At step three of the sequential evaluation, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in Appendix 1 of the Regulations (the "Listings"). *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If a claimant meets or equals a listed impairment, he or she is "conclusively presumed to be disabled and entitled to benefits." *Bowen v. City of New York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986); *see also Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *see also* 20 C.F.R. §§ 404.1525(a); 416.925(a).

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

24).  A severe impairment under step two, combined with this IQ score would meet the Listing. *See Dawson v. Astrue*, No. EDCV 09-00661, 2010 U.S. Dist. LEXIS 6716, at *17 n. 5 (C.D.Ca Jan. 27, 2010).  The ALJ found that Plaintiff did not satisfy the criteria because he did not have a physical or other mental impairment imposing an additional and significant limitation of function. (T at 24).  This finding turns on the ALJ's step two analysis, which was flawed for the reasons outlined above.

In addition, the ALJ read inferences into Dr. Asher's testimony that are not adequately supported and justified by the record.  In particular, the ALJ stated: "While Dr. Asher initially indicated that [Plaintiff] would meet Listing § 112.05, further questioning indicated that Dr. Asher believed that [Plaintiff] had borderline intellectual functioning without meeting any of the other criteria for meeting or equaling that listing." (T at 26-27).  The ALJ's language here is telling.  The ALJ noted that further questioning "indicated" what Dr. Asher "believed" about whether Listing §112.05 was met.  The word "indicated" is used because Dr. Asher did not actually say that.  In fact, Dr. Asher said that Plaintiff "seems to satisfy the criteria . . ." of the Listing.  (T at 66, 69).  The doctor then appeared to offer some qualification to his assessment, but the transcriptionist found that portion of his testimony "inaudible." (T at 68). Although Dr. Asher thereafter testified that Plaintiff's

22

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

impairments did not *functionally* equal the Listing (T at 70-74), it appears that he never disclaimed his opinion that Plaintiff met Listing § 112.05.[3] (T at 66, 69).

At best, Dr. Asher's assessment *might* be considered ambiguous because of the transcription problem. If that were the case, however, the ALJ should not have guessed as to what Dr. Asher's testimony "indicated" on this key issue, she was bound to re-contact him and clarify the point. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)("Ambiguous evidence . . . triggers the ALJ's duty to conduct an appropriate inquiry.").

The ALJ afforded "great weight" to Dr. Asher's opinion when concluding that Plaintiff's impairments did not meet Listing §112.05. (T at 27). Dr. Asher's opinion 1) is either ambiguous and should have been developed further or, more appropriately, 2) supports the opposite conclusion from that reached by the ALJ. In either event, it does not provide support for the ALJ's Listings analysis, which cannot be sustained.

For the same reasons, the ALJ's conclusion that Plaintiff's impairments did not met Adult Listing §12.05C must be reversed. That Listing likewise requires a (1) a valid verbal, performance or full scale IQ of 60 through 70 and (2) a physical

---

[3] Equivalence to a Listing can be either medical or functional. 20 C.F.R. § 416.924(d). If an impairment is found to meet or qualify as medically or functionally equivalent to a listed disability, and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1).

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

or mental impairment imposing an additional and significant limitation of function. In April of 2011, Plaintiff's verbal IQ was assessed at 70 (T at 320-22) and his social phobia and dysthymia impose additional and significant limitations of function. (T at 177, 213, 215, 231, 312, 323).   There is thus no dispute regarding the first (IQ) prong and the second prong was met because of the evidence establishing the severity of Plaintiff's social phobia and dysthymic disorder.

> c.        *Mr. Martinez*

The Ninth Circuit has held that "friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) "Disregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. § 404.1513(e)(2)." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). An ALJ must give "germane" reasons for discounting such evidence. *Dodrill*, 12 F.3d at 919.

Maurilio Martinez, Plaintiff's father, reported that Plaintiff cannot make new friends, keep busy on his own, finish things he starts, or complete chores most of time. (T at 213, 215).   The ALJ found Mr. Martinez "largely credible," but determined that Plaintiff was not as limited as his father believed. (T at 26).   Here

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

again, the ALJ cited Plaintiff's work history and limited social activities, finding this evidence "somewhat inconsistent" with Mr. Martinez's report. (T at 26).   As discussed above, Plaintiff's work history and daily activities were both quite limited. Moreover, the ALJ does not appear to have considered that Plaintiff (whose judgment and insight are impaired) was not as reliable in his self-reports as his father was in his assessment.

Lastly, Mr. Martinez's statements serve to mitigate and explain any apparent discrepancy between the limitations he identified and Plaintiff's activities.   For example, Mr. Martinez explained that Plaintiff often agreed to complete chores, apparently believing he could complete them, but would then make mistakes or be unaware of necessary safety precautions. (T at 321).   In addition, although Plaintiff "attends" family functions, he self-isolates during such events by staying in his room. (T at 321).   The ALJ thus did not adequately address the evidence provided by Plaintiff's father.   This error provides a further reason for remand.

## D.    Remand

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand the matter for additional proceedings or an immediate award of benefits. A remand for calculation of benefits is warranted where "(1) the ALJ failed to provide legally sufficient reasons for

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)(quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

Here, as set forth above, this Court finds that the ALJ did not provide legally sufficient reasons for rejecting the evidence concerning the severity of Plaintiff's social phobia and dysthymic disorder.  In turn, this error undermined the ALJ's Listings analysis.  The ALJ also placed undue emphasis on Plaintiff's very limited work history and daily activities, which led to an improper discounting of the evidence, including Dr. Billings's assessment and the statements of Plaintiff's father. There are no outstanding issues that must be resolved before a determination of disability can be made.  It is clear from the record that the ALJ would be required to find the claimant disabled if the evidence had been properly analyzed and credited. Although the non-examining State Agency consultants (Dr. Gardner and Dr. Beaty) opined that Plaintiff was not disabled (T at 90, 99), these opinions cannot, without more, constitute substantial evidence sufficient to sustain the ALJ's decision. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)(citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990)).

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB

## IV. ORDERS

IT IS THEREFORE ORDERED that:

Plaintiff's motion for summary judgment, Docket No. 15, is GRANTED.

The Commissioner's motion for summary judgment, Docket No. 21, is DENIED.

This case is REMANDED for calculation of benefits.

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of Plaintiff, and close this case.

DATED this 2nd day of March, 2015.


/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – MARTINEZ v COLVIN 14-CV-03047-VEB